Good morning, Your Honors. Emerson Wheat appearing on behalf of Appellant Dwight Rhone. I would say I think the issue that I would like to sort of dispose of in some measure is the double jeopardy argument. None of the parties, myself included, raised the Blockburger issue. I acknowledge that the law says it needs to be the same elements in order for that double jeopardy claim to stand. I certainly would argue that there's a waiver issue there, but I acknowledge the court does have an ability to consider pure questions of law at its own discretion. And frankly, I think Mr. Rhone would lose on this claim if the Blockburger issue had been presented before the district court. It did not get presented and certainly the judge did not rule on that. But I think this sort of dovetails into part of the discovery challenge here. Originally I asked for evidence from the government indicating what types of communications they had with their state counterparts to bring Mr. Rhone over from state to federal court on this felon in possession case. And I was brought to that particular issue because of the statement in order. It stands out. It's stark and it's page 294 of the volume 2 of the excerpts. But the state judge's clerk wrote, defendant is ordered to be present at the next hearing. Defense counsel is to inform the court that the defendant will be taken into federal court after today's hearing. The court requests any assistance from the federal agents to have the defendant appear at the next hearing. And that is strange. The federal agents went to the 11th floor of the superior court in San Diego, the central branch, and they waited for Mr. Rhone to walk towards his sentencing hearing on a felon in possession case, although he did plead to the health and safety possession of narcotics while armed charge. But he was originally charged as a felon in possession. And I wanted the communications between the federal law enforcement and prosecutors and their state counterparts because I did want to raise a collusion claim. And when that discovery request was denied by the district court, I didn't have any way to present that. And so instead I had to take this bird's eye view of the Bartkus challenge by identifying 30-some-odd similar cases of felon in possession starting in state court and then being brought over to federal court. And pulling the minute entries, and it's not uncommon, but the uncommon element was that Mr. Rhone was being brought over on his way to the sentencing hearing and Jeopardy had attached. So certainly I was fixated on the Jeopardy issue, but it's a tougher challenge to make because I'm arguing about what the government does generally versus what happened here. And so I couldn't get into what effectively looks to me like there's some sort of collusive efforts to communicate from the state officers or prosecutors to the federal prosecutors or officers to please intercept Mr. Rhone on his way into sentencing for some reason. Because certainly Gamble says that they could have prosecuted him subsequently. The federal government could have after sentencing. So something seemed unusual here. And I'm not privy to what that was and I don't care to speculate, but I do think that would have made for a better challenge as it relates to collusion. And the government's citation to United States versus zone was interesting because this was another attempt at making a Bartkus challenge. But there was also a similar discovery request made. And defense counsel in that case, they were citing articles about what might have been project safe neighborhoods or precursors to that, I think in the early 2000s. But they clearly weren't very effective at getting the information they needed through discovery. And what the Ninth Circuit said, the district court did not abuse its discretion in denying zones discovery requests because he did not make a preliminary showing of inter-sovereign collusion as opposed to mere inter-sovereign cooperation. And that is the point. I wasn't able to make that claim. And I think this is a really key part of Mr. Rhone's case. I identified very clearly for the court what I would like to challenge. I made very clear requests for the discovery. I saw it. And ultimately, I wasn't able to get there. And so I did cite the question about the state court or the federal court. The federal court denied the discovery request to me. Okay. And so I made that claim. But I think the denial of the discovery certainly impeded me from making other claims. Unless the court has questions, I'd like to turn to the destruction of evidence argument. I think this one is problematic for the government. And we're talking primarily about the Camaro because it was the piece of evidence that I would want to see as a defense lawyer is the Camaro. I want to see the taillight doesn't work. And I appreciate that the officer came in and testified to the same thing he wrote in his reports, that the third taillight was inoperable. But that's expected. And the role of defense counsel is to be able to test the evidence. And I know we have these cases somewhat regularly in the Southern District where, you know, things are disposed of at the border because of the volume of cases and perhaps the lack of space. But in this case, the car was not preserved. And whether we call that dispose or failure to preserve, it wasn't. And that falls on the government. The case was brought over five months after the arrest to the federal court. And apparently, nobody asked. The prosecutor, the federal prosecutor never asked, do we have this evidence? Is there anything else? Are there any issues with our case? And when I asked the court to preserve the evidence and it did preserve it, I certainly would have liked to have seen that taillight. The question I have about that is that it's possible, isn't it, that the taillight wasn't working at the time of his arrest, but later someone fixed it. So I don't understand what evidentiary value, unless you could seize it or test it, you know, very close to the time that the police impounded it. Correct. And I think the concern was the government, the state government, did not proceed with preserving the evidence because they negotiated a plea agreement with Mr. Rung. And on the other hand, when the federal government picked it up, I never had that opportunity. I didn't negotiate a plea agreement. And so my role started anew when that case was charged in federal court. I couldn't see it. And I don't think anybody was going to fix it and impound while it was still in police impound. And whether or not they have an obligation, the government, to return the car to the lawful owner, there are ways that they could have tried to capture that evidence. And these are apparently traffic cops doing traffic enforcement in state court, and they're very familiar with Fourth Amendment challenges. This was the basis for their stop. It was an inoperable third taillight, and I think that their failure to preserve that is problematic for the government. I think it would warrant reversal. And I would like to reserve the remaining time, please. All right. You may do so. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. To pick up on the trombetta claim that the defense was just referring to, the government's position is that there was no trombetta violation. And as this Court is aware, there's a multi-factor test, and the defense has to satisfy all of them. In this case, when this car was seized, you have to keep a few things in mind. First of all, the car itself was not an instrumentality of any crime. The car belonged to the passenger, a man named Avery Clemens. He was arrested but released the same day. And so, you know, on one hand, as the district court pointed out below, he's not aware of any legal principle that would require, you know, a police department to keep property from its lawful owner. Now, the other thing is, based on the unique facts here, as set forth in the briefs, the defendant knew Mr. Clemens. He was a friend of his. In fact, the day of the arrest, they were driving around running errands. And so, you know, the third factor of trombetta is whether the evidence was reasonably available by other means. The government would strenuously argue here that it was. There was nothing preventing the defendant from calling Mr. Clemens as soon as he was released, because we know he was released on his own recognizance in that June case. And at the time, you know, it takes weeks, if not at least a month or two, for the state to negotiate a guilty plea. When Mr. Rohn was released on that case in June of 2023, he didn't know what was going to happen. But if he was this up in arms about the fact that thought light did, in fact, work, all the government is saying is that he had means. And there was never any mention below that he tried to exhaust those. But, you know, the other basic point is whenever one hears trombetta claim, there has to be a destruction of evidence. This evidence was not destroyed. At most, it was released from impound. And, you know, even I believe the district court also made an express finding that he saw no destruction. And then the last thing, the last point I want to make about trombetta is, as we point out in our briefs, you know, there's another fundamental disconnect here. The law has never been read, at least trombetta law, to impose an affirmative duty on the government to create evidence that didn't exist. I mean, you see it, you know, a lot of municipalities now, they have body cams, dash cams as a matter of policy. I don't believe that's constitutionally required. Here, you know, if the court or if the municipality was going to, let's say, destroy the car, and I think this was the Loud Hawk case where they destroyed dynamite, they took a picture of it first. In this case, there was no destruction of the car by the State, so there would have never been any need for them to, you know, to make a video of that. So that's basically the government's position on trombetta. Now, as far as the double jeopardy, a couple points. And the government appreciates defense counsel's admissions. It is unfortunate that the Blockburger point wasn't made expressly to the court below. What the government did, it was almost like we, you know, we presumed that there could be a double jeopardy claim and all the litigation was about the Barkas exception. But as this court is aware, and as defense even pointed out, it's a pure issue of law, and I believe there is precedent from this court that says parties aren't limited to the exact arguments they've made below. And there was no question that the government had always opposed this double jeopardy claim. But if, so long as the court finds that the Blockbuster, I'm sorry, if the court finds that the Blockburger test is not satisfied, as far as the comments about the discovery, the government would have two points. First of all, failure to satisfy Blockburger renders the rest of it irrelevant, is the government's position. We cited cases, I believe, at page 18 of the government's brief. There is a district court case out of Nevada. I couldn't find any cases from the Ninth Circuit, but I found plenty from other circuits which say when the Blockburger test is not satisfied, you don't even get to the Barkas exception. But the other thing I just want to point out, you know, to the extent, you know, there was a lot of mention below from defense that, oh, this just seems unusual, it doesn't pass the smell test. It is an unusual set of circumstances, but I think there is an explanation in the record. The prosecutor represented below that he never even knew anything about those State cases until the second arrest, which was November 6. The Federal complaint came just three weeks later on November 28. Defendant was arrested the day after. At page 440 of the record, it's indicated that the defendant didn't have a stable residence at the time. So the Federal agents, apparently, they obviously they're armed with an arrest warrant, and it's only Federal agents that arrest him. They know from the State records that his next appearance, and he's on his own recognizance, will be at State court. So I think that's the explanation for that. But that's certainly, yes, it's unusual. I've been here, you know, many years in the U.S. Attorney's Office. I haven't seen a situation like that. Unfortunately, the prosecutor who was on the case at the time has left the office. So, you know, I can't give any further explanation of the circumstances. But the only thing I would point out is that even if the Blockburger test weren't satisfied, you still have here no evidence of the improper collusion. You know. I know. And that's what your friend on the other side is complaining about, is that he made a motion for discovery on that issue, and he didn't get it. Right. But at the time, the court, though, he was relying solely on the timing. But you look at other authorities, like the Lucas case from this Court. Lucas said, coincidental, perfect timing in and of itself is not enough. The prosecutor represented to the Court that he had no e-mails, no communications. The district court found that there was no communication between the State and the Federal before the two State offenses. My only point, just the big picture, is the whole point of this Barkas exception is to show some kind of collusion. They talk about where there's an initial State or Federal, and then the second one is a sham, a tool. And the Court, the case law says it's very hard to prove that. And here, if the Federal government had zero involvement in those first two arrests, there's no improper use of the machinery. You know, another case uses the word where one sovereign dominates the judicial machinery of the other one. You don't have that. And then when the arrest time comes for the Federal case, I think it's pages two of three of the Supplemental Excerpt of the Record. It's only FBI agents. All, you know, the timing is what it is. But the point being, it never looks like, I don't know, you know, I don't understand how one could say it's a sham because the State was allowed to do what they wanted without any interference. And again, jeopardy is measured as of the time of the guilty plea. It's not measured as of the time of sentencing. So, you know, the State cases, they didn't have to end up dismissing them, but they did. But again, my point being, if the Blockburger test isn't satisfied, the government's position is that this is all academic. So Roan is serving no time on the State court conviction? Correct. Which is also, you know, and maybe that's the last ironic thing I'll point out, because I know that, you know, I think the defense referred to it as that the government somehow conspired with the State to breach the plea agreement. That case is gone. You know, I would think a lot of, he has less paper, less convictions because of that. So if anything, the fact that the Federal, you know, came in, perhaps awkwardly at most, it actually relieved him of that other case and all the consequences that flow from that. So unless the Court has any further questions, I would yield the remainder of my time. Okay. Thank you, counsel. Thank you. With my limited time, I want to touch briefly on the Fourth Amendment issue. I'll just note this. The discovery issues and certainly the lack of the vehicle being preserved, the lack of the dispatch audio being preserved, I think that implicates the government's burden under the Fourth Amendment to stand up for their, the legality of their stop. And not once did the government brief totality of the circumstances. Did they list out the other circumstances other than officer credibility? It wasn't really raised orally in the hearings, and it wasn't even raised in the answering brief. And I find that troubling because this is their burden. And ultimately, if I'm going to challenge that stop, I want to see the government actually have the evidence to demonstrate that the stop was legitimate. Last point, just from, I'd like to read a quote from United States v. Soto's Iniga. It says that, it may well be that Agent Rabot's experience and knowledge is consistent with the general practices at the San Clemente checkpoint, but there is a risk that the district court made its decision as if, in part, blindfolded. Considering only one version of the evidence, our system of criminal justice relies on an adversary system to help ensure that justice will be done. And I think that's the trouble here, is I didn't get the evidence I was looking for to make as robust of a challenge as I would have liked. Thank you. All right. Thank you, counsel. U.S. v. Rome is submitted. And we'll take up our last case for today, U.S. v. Blandin.
judges: WARDLAW, ALBA, Brown